UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES,

    Plaintiff,

v.                                        Action No. 2:25cv597

ALVIN E. KEELS, JR.,

    Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Alvin Keels' ("Keels") motion, filed on February 4, 2026, to quash or modify seven subpoenas issued by the United States. ECF No. 16. The motion seeks to prevent "various banks and credit companies" from being required to respond to the subpoenas regarding Keels' finances from 2016 to the present. ECF No. 17, at 1. The United States filed a response in opposition on February 13, 2026, ECF No. 19, to which Keels replied on February 19, 2026, ECF No. 20. For the reasons discussed below, the motion to quash or modify the seven subpoenas, ECF No. 16, is **DENIED**.

### I.    FACTUAL BACKGROUND

The United States brought this suit seeking "to collect the nondischargeable unpaid federal income taxes and interest assessed against [Keels] for the 2006, 2008 to 2012, and 2015 tax years." ECF No. 1, at 1. The United States alleges that during the pertinent years, the Secretary of the Treasury of the United States assessed a total of $5,461,589.00 in federal income taxes, penalties, and interest against Keels as of September 17, 2025. *Id.* ¶¶ 6–9. Despite receiving notices of such assessments, the United States alleges that Keels failed to pay. *Id.* ¶ 7.

Instead, Keels filed a Chapter 7 bankruptcy petition on February 8, 2021, in the Eastern District of Virginia, and received an order of discharge on June 21, 2021. *Id.* ¶¶ 10–11. However, the United States alleges that this discharge does not absolve Keels of his over five million dollars in debt because he willfully evaded paying the assessed sum. *Id.* ¶¶ 13–14. The complaint alleges that Keels engaged in the following behavior as evidence of willful evasion: (1) failing to timely file tax returns; (2) underreporting taxes owed; (3) filing extensions without making payments; (4) failing to make sufficient withholding or estimated tax payments or make payments when filing his returns; (5) choosing not to pay his tax debts for nearly 20 years despite possessing sufficient funds; (6) spending money on discretionary expenses rather than paying his tax debts; and (7) using "nominees," including his various businesses, to shelter assets. *Id.* at 4. The United States requests that the Court find that the assessed taxes were not discharged in the bankruptcy case and that Keels is indebted to the United States in the amount of $5,461,589.00. *Id.* at 5.

On January 24, 2026, the United States "issued subpoenas to seven different banks and credit companies, seeking documents [] from 2006 to the present." ECF No. 17, at 2. These subpoenas requested five types of documents: (1) "all transactional documents . . . for any vehicle loans or leases for which [Keels] was the borrower, lessee, or guarantor"; (2) any applications for credit submitted by or on behalf of Keels; (3) "all documents submitted in support of any credit or lease applications by or on behalf of [Keels]"; (4) "all documents reflecting payments by or on behalf of [Keels] for vehicles for which he was the borrower, lessee, or guarantor"; and (5) "any credit files . . . for . . . loans for which [Keels] was the borrower or guarantor." *Id.* at 2–3.

The United States elaborates in its response to the motion that "[i]n the years between when [Keels] accrued the tax liabilities . . . 2006 to 2015 [] and when [Keels] received his Chapter 7 bankruptcy discharge [on] June 21, 2021 [Keels] spent lavishly, including several luxury cars."

2

ECF No. 19, at 2. Keels allegedly disclosed owning 5 cars on his bankruptcy schedules, but the United States has found evidence that he or "an entity in which he had an ownership interest" owned another 13 cars. *Id.* at 3–5. Many of these cars are described as "luxury" and the United States estimates the retail price for these vehicles exceeded $940,000.00. *Id.* at 4. The United States also claims that some of the vehicles were purchased shortly after Keels concluded negotiations with the Internal Revenue Service ("IRS") regarding his outstanding taxes and that during negotiations he "continued to spend his income on discretionary expenses." *Id.* at 5. The goal of the subpoenas is to obtain "information concerning the car payments [Keels] was making instead of paying his taxes." *Id.* at 2.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs subpoenas issued to third parties. Fed. R. Civ. P. 45. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Court must quash or modify a subpoena, upon a timely motion, if the subpoena: (1) "fails to allow a reasonable time to comply;" (2) "requires a person to comply beyond the geographical limits specified in Rule 45(c);" (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or (4) "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The moving party bears the burden of demonstrating that a subpoena must be quashed under Rule 45(d)(3), *Va. Dep't of Corr. v. Jordan*, No. 3:17mc2, 2017 WL 5075252, at *4 (E.D. Va. Nov. 3, 2017), including whether the subpoena subjects a party to an undue burden, *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).

"Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012); *see also In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612 ("A subpoena imposes an undue burden on a party when a subpoena is overbroad."). Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Although Rule 26 does not define "relevant," relevance in the discovery context has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin., LLC*, No. 1:06cv889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13cv4480, 2016 WL 8252929, at *3 (S.D.W. Va. Nov. 23, 2016) (noting that the discovery standard for relevance is broader than relevance for the purpose of admissibility at trial). The Court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

### III. ANALYSIS

**A. Though Keels arguably has standing, the Court need not decide this issue as Keels has not certified that he has in good faith attempted to or actually conferred with opposing counsel.**

"[N]owhere in [his] motion, or in [his] memorandum of support, does [Keels] cite to the relevant provision of the Federal Rules of Civil Procedure where a district court is given authority to quash a subpoena." *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13cv658, 2014 WL 12551212, at

\*1 (E.D. Va. May 29, 2014). Instead, the United States raises the issue of Keels' standing to challenge the subpoenas in its response to the motion, arguing that Rule 45 governs in this case. ECF No. 19, at 6–7. The United States contends that Keels lacks standing because he has failed to prove that he has "a personal right or privilege to the information sought by the subpoena" as is required for what the United States characterizes as Keels' Rule 45(d) challenge. *Id.* at 6. In reply, Keels argues that "no special privilege is necessary for [Keels] to have standing, and [Keels] has a personal right in his personal, confidential bank loan records." ECF No. 20, at 2. However, even if the Court were to find that Keels did not have a personal right or privilege, Keels requests that the Court construe the motion as a motion for a protective order and find he has standing to bring such motion. *Id.* at 3.

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *Singletary*, 289 F.R.D. at 239 (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)); *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004) ("A motion to quash should be made by the person or entity from whom or from which the documents or things are requested."); *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at \*1–2 (D. Md. Feb. 23, 2010) (collecting cases). "[A] personal right does not attach to bank records because they 'are not confidential communications, but instead instruments of commercial transactions' and 'the business records of the'" financial institution. *Singletary*, 289 F.R.D. at 240 (citing *Robertson*, 2010 WL 716221, at \*1–2). According to Keels' own description, the subpoenas were issued to "seven different banks and credit companies" and requested documents relating to his loans, leases, credit applications, payments toward such transactions, and credit files.

5

ECF No. 17, at 2–3. Therefore, Keels lacks the personal right necessary to challenge the subpoenas through a typical Rule 45(d) motion to quash.

However, Keels arguably possesses the limited standing to challenge the subpoenas on "undue burden grounds" by way of the interaction between Rules 26 and 45. *In re Thompson-McMullan, P.C.*, No. 3:16mc1, 2016 WL 1071016, at *3–4 (E.D. Va. Mar. 17, 2016). A party "has standing to seek a protective order for any of the reasons listed in Rule 26(c)(1)." *Id.* at 3.

> Because a protective order has the practical effect of both quashing an instant subpoena and preemptively quashing all future subpoenas, courts in this district have held that a party's standing to seek a protective order on behalf of a third party on the basis of undue burden establishes that party's standing to move to quash a subpoena on the same basis of undue burden. This practical rule is also consistent with the Eastern District of Virginia's recognition that the relevance constraints of Rule 26(b) serve as constraints on all other discovery mechanisms, including Rule 45, such that parties have standing to challenge any discovery request that imposes an undue burden by seeking information beyond the scope of relevance set by Rule 26.

*Id.* at 4 (citations omitted). Essentially, the relevance constraint of Rule 26 could confer standing to Keels to move to quash the subpoenas as an undue burden on the third parties under Rule 45.

**B.     The motion must, however, be denied because Keels failed to certify that he has in good faith conferred or attempted to do so with the other affected parties.**

Local Rule 37 mandates that

> [c]ounsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. *No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy.* The Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue.

E.D. Va. Local Civ. R. 37(E) (emphasis added). Additionally, a protective order under Rule 26(c) may be issued by the court "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such a motion "*must* include

6

a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* (emphasis added). "The requirement to meet and confer is an important tool in the court's efforts to streamline and economize the discovery process because 'person-to-person dialogue most often leads to the resolution, or at least the limitation, of dispute[s].'" *Rainey ex rel. Rainey v. Anderson*, No. 2:17cv444, 2018 WL 3636596, at *1 (E.D. Va. Apr. 11, 2018) (quoting *Kolon Indus., Inc. v. E.I. Dupont De Nemours & Co.*, No. 3:11cv622, 2012 WL 12894840, at *4 (E.D. Va. Feb. 23, 2012)). Because Keels' requests that the Court construe the motion as a Rule 26 motion for a protective order, both Local Rule 37 and Rule 26's meet and confer requirements are applicable to this case.

Keels has failed to make the necessary showing that he has in good faith met and conferred or attempted to do so in an effort to avoid this Court's intervention. Nowhere in his original motion, brief in support, or brief in reply does Keels make the necessary certification, nor does he mention any such efforts. Accordingly, Keels' motion cannot be granted as he has failed to certify that he has at least attempted to resolve this dispute through the meet and confer process.[1]

---

[1] If the Court were to excuse the parties' failure to meet and confer, find that Keels had standing, and proceed under the Rule 26 relevance standard, the motion would be denied on the merits. Evidence relating to Keels' lavish spending while his tax obligation was outstanding and he was actively negotiating the obligation with the IRS is indisputably relevant to the United States' claim in this case. *See, e.g., United States v. Clayton*, 468 B.R. 763, 770 (M.D.N.C. 2012) (explaining that nonpayment coupled with a series of other actions like failing to file timely returns, concealing assets, keeping inadequate records, and keeping a lavish or extravagant lifestyle are "relevant if they took place either during the tax year(s) in which the debtor failed to pay or during later years while the tax obligation remained due"). As long as the debt remains outstanding, the Court need not "impose some reasonable end date" as Keels suggests. ECF No. 20, at 4.

## IV. CONCLUSION

For the reasons discussed above, Keels' motion to quash the United States' subpoenas, ECF No. 16, is **DENIED**. The Clerk is **DIRECTED** to send a copy of this memorandum opinion and order to all counsel of record.

**IT IS SO ORDERED.**

/s/
‎                                    Robert J. Krask
‎                                    United States Magistrate Judge

Norfolk, Virginia
February 26, 2026